**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| MID SOUTH SALES COMPANY, INC. | CIVIL ACTION |
| VERSUS | NO. 06-6382 |
| CONTINENTAL CASUALTY INSURANCE COMPANY | SECTION B(5) |

**ORDER AND REASONS**

Before the Court is Defendant's Motion for Summary Judgment to dismiss claims against Defendant (Rec. Doc. No. 6), After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **DENIED**.

*BACKGROUND*

Plaintiff, Mid South Sales Company ("Mid South"), a wholesale parts company located in Slidell, Louisiana, sustained damage from Hurricane Katrina on August 29, 2005.  Mid South claimed damage to the building, its equipment and inventory in stock from wind and water damage from the hurricane.  Defendant, Continental Casualty Insurance Company, issued policy number 1074887348 to Mid South effective June 1, 2005 through June 1, 2006.  Mid South received payment for damage sustained due to flood waters, but claims its wind insurer, Continental, refused to pay for the loss of that portion of the stocked inventory that was above the adjuster's determined water mark of 57".  Mid South claims this loss of stocked inventory was attributed to wind damage at the time of the hurricane and/or theft or

1

vandalism to said business post-Katrina, or a combination of both. (Petition, paragraph II). Plaintiff seeks statutory penalties for alleged bad faith for the failure of Continental to honor its contract of insurance with said plaintiff; and the failure of said insurance company to pay said loss. (Petition, Paragraph VII).

   Mid South used a computer program to generate a paper account of its inventory. Twice a year a physical inventory was conducted, and a partial physical inventory was completed monthly. A paper inventory completed before the storm, Friday, August 26, 2005, revealed that property listed on the inventory was no longer present after Hurricane Katrina. Mid South conducted an additional physical inventory, and scrutinized its records, including: sales records, purchase orders, vendor transaction reports and cancelled checks to insure the accuracy of the Mid South claim. This effort was followed up by a Defendant-hired expert who conducted an inventory.

   After Hurricane Katrina, the Mid South building was severely compromised; the front of the building was knocked in. In the warehouse, debris, mud and some inventory was present. However, the shelves remained in tact, inconsistent with high winds.

   Widespread looting in the vicinity of Mid South also occurred after Hurricane Katrina. The affidavit of a neighbor living across the street from Mid South revealed that her home was looted/burglarized after the storm.

Defendant seeks summary judgment on the basis that the missing inventory constitutes "missing property", not stolen property, which falls under a coverage exclusion in the insurance policy.  In making this allegation, Defendant points to the unpredictable nature of the inventory methods used by Plaintiff, the condition of the store (shelving in tact) after the hurricane, and to the sequence and description given to Defendant by Plaintiff alleging theft.

Plaintiff asserts that Defendant's motion for summary judgment should be denied because Defendant failed to meet its burden for summary judgment.  Plaintiff points to the insurance policy language to assert that it is covered for loss or damage to property caused directly or indirectly by Windstorm or Hail, regardless of any other concurrent cause or event.  Plaintiff has made claims against its insurance policy for windstorm damage due to Hurricane Katrina and looting/theft of some of the business property in the aftermath of the storm.  According to Plaintiff, Hurricane Katrina may have been the indirect cause of the burglary it alleges in its claim. In addition to the indirect cause assertion, Plaintiff claims that the use of "shortage" in the policy may be considered ambiguous, leading to the use of the "reasonable expectation doctrine." Finally, Plaintiff supports its claim of theft by pointing to the record to show circumstantial evidence of theft.

### *LAW AND ANALYSIS*

**A.   Summary Judgment Standard**

Summary judgment is appropriate if the pleadings, depositions, interrogatory answers and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56©); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2554-55 (1986).  A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the non-movant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the non-moving party, the non-movant must produce specific facts to demonstrate that a genuine issue exists for trial.  *Webb v. Cardiothoracic Surgery Associates of North Texas*, 139 F.3d 532, 536 (5th Cir. 1998).  The non-movant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue.  *Id*.  The mere existence of a scintilla of evidence in support of the non-movant's position is insufficient to defeat a properly supported motion for summary judgment. *Anderson,* 477 U.S. at 252, 106 S. Ct. at 2512.  Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment.  *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

**B. Insurance Policy Language Supports Coverage for Loss of Damage to Property Caused Directly or Indirectly by Windstorm or Hail**

Defendant relies upon the insurance policy language of exclusion of missing property to support its motion for summary judgment.  Meanwhile, Plaintiff contends that the insurance policy language supports its claim that it should receive coverage for theft and for loss or damage to property caused directly or indirectly by Windstorm or Hail, regardless of any other concurrent cause or event.  According to Plaintiff, Hurricane Katrina may have been the indirect cause of the burglary it alleges in its claim.

In order ascertain the precise coverage provided by the policy, the policy in its entirety should be examined as opposed to simply examining its individual parts.  The insurance policy in question consists of a mixture of endorsements and forms pieced together to form a commercial property insurance contract.  The following documents comprise the relevant insurance policy:

- **Building and Personal Property Coverage Form** (Form G-18641-A)(sixteen page document)
- **Business Income (and Extra Expense) Coverage Form** (Form G-17850-A)
- **Two Declaration Forms** (nine and three pages, respectively)
- **Commercial Property Conditions** (CP 00 90 07 88)(one page)
- **Louisiana Changes** (CP 01 16 1091)(one page)
- **Windstorm or Hail Percentage Deductible** (three pages)
- **Loss Payable Provisions** (two pages)
- **Business Income and Extra Expense Equipment Breakdown Deductible** (one page)
- **Louisiana Changes** - Appraisal (one page)
- **Equipment Breakdown Cause of Loss Extension Endorsement** (two pages)
- **Computer Virus and System Penetration Exclusion**
- **Common Policy Conditions**
- **Calculation of Premium**  (one page)
- **Cause of Loss - Special Form** (Form G-18660)(ten pages)
- **Adulteration or Contamination to Stock Exclusion** (see Form

    G-147123-A) (one page)
- **Coordination of Deductibles** (see Form G-123098-B)(one page)
- **Economic and Trade Sanctions Condition** (Form G-144291-A)

 Defendant contends that the items Plaintiff claimed as stolen simply constitute missing property, and are therefore excluded under the insurance policy.  Defendant points to the affidavit of Joseph C. Hymel, a representative of MidSouth to support the claim that the claimed inventory was not stolen, but just missing.  When asked how he knew the items missing from the paper inventory list had been damaged or destroyed, Mr. Hymel responded, "[t]hey're not there. They're missing.  I don't know if they were damaged.  I don't know if they were destroyed.  I don't know where they are." (Defendant Exhibit 1 p.90).  Defendant's claim is further supported by items remaining in tact, such as pictures, as well as, paperwork, which remained undisturbed although just as or more susceptible to winds.

 Defendant points solely to "The Causes of Loss-Special Form, to support its assertion that Plaintiff's claim is excluded.  An exclusion for "missing property" under the policy is provided for in "The Causes of Loss-Special Form, Form G-18660-A", which provides:

  A. COVERED CAUSES OF LOSS
   1. When Special is Shown in the Declarations, Covered
   Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS
   unless the loss is:
    a. Excluded in Section B., EXCLUSIONS; or
    b. Limited in Section C., LIMITATIONS; or
    c. Excluded or limited in any option or
    endorsement modifying the exclusions or
    limitations in Sections B and C of this form.
  B. EXCLUSIONS
   1.  We will not pay for loss or damage caused directly
   or indirectly by any of the following.  Such loss or
   damage is excluded regardless of any other cause or

>   event that contributes concurrently or in any sequence
>   to the loss.
>
>   \*\*\*
>   g. Water
>       (1) Flood, surface water, waves, tides, tidal
>       waves, overflow of any body of water or their
>       spray, all whether driven by wind or not;
>   \*\*\*
> C. LIMITATIONS
>   The following limitations apply to all policy forms and
>   endorsements to which this Causes of Loss Form applies,
>   unless otherwise stated.
>       1.  We will not pay for loss of or damage to
>       property, as described and limited in this
>       section.  In addition, we will not pay for any
>       loss that is a consequence of loss or damage as
>       described and limited in this section.
>       \*\*\*
>           c.  **Property that is missing, where the only
>           evidence of the loss or damage is a shortage
>           disclosed on taking inventory or other
>           instances where there is no physical evidence
>           to show what happened to the property.**
>               This exclusion does not apply to:
>                   (1) Property in the custody or
>                   carriers or other bailees for hire
>                   (2) Electronic data processing
>                   equipment;
>                   (3) The (a) Restoration of Data,
>                   Valuable Papers and Records; (b)
>                   Storage of Duplicative Data and
>                   Records; or (c)Accounts Receivable;
>                   Coverage Extensions in the Building
>                   and Personal Property Coverage
>                   Form; Form G 18660-A, pp. 1,2,3,6

The language of this section supports Defendant's claim that missing property is not covered by the policy.  However, Defendant does not reconcile this section with the other component parts of the policy under which Plaintiff may make its claim.

Plaintiff highlights the Windstorm or Hail Deductible endorsement of the insurance policy, which modifies the Building

7

and Personal Property Coverage Form, to support its claim.  The endorsement states that it

> " . . .applies to loss or damage to covered property caused directly or indirectly by Windstorm or Hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.  If loss or damage from a covered weather condition other than Windstorm or Hail occurs, and that loss would not have occurred but for the Windstorm or Hail, such loss or damage shall be considered **part of the Windstorm or Hail occurrence.**"

This coverage endorsement supports Plaintiff's assertion that its claim is protected under the policy.  A closer analysis of the Building and Personal Property Coverage Form reveals that the relevant exclusions noted in the main insurance policy document include only those specified in the "Declarations Form" or in the "Your Business Personal Property - Separation of Coverage Form."  Not only does the Declarations page lack a reference to such an exclusion, but the Your Business Personal Property -Separation Coverage From is not part of Plaintiff's policy.  This Court finds that the full context of the policy supports Plaintiff's allegation that its claim is covered by the policy and contravenes the missing property exclusion.

    **C.   Policy Interpretation Does Not Support Exclusion of Coverage**

The poor drafting of the insurance policy should not permit Defendant to escape from providing coverage where such coverage is provided for in the policy.  Although this case has been removed to Federal Court and the Federal Rules of Civil Procedure govern the motion for summary judgment, Louisiana substantive law will apply in order to determine whether Defendant owes any

8

sums under the terms of its policy. 28 U.S.C. §1652. Louisiana courts have stated that insurance policies should be construed employing the general rules of contract interpretation set forth in the Louisiana Civil Code. *Smith v. Matthews,* 611 So.2d 1377, 1379 (La. 1993). The Louisiana Supreme Court has stated that the ". . . parties' intent as reflected by the words in the policy determine the extent of coverage." *La Ins. Guaranty Ass'n v. Interstate Fire & Casualty Co.*, 93-0911 (La. 01/14/94), 630 So. 2d 759, 763. When the words if an insurance contract are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written. *Clulee v. Bayou Fleet, Inc.,* 04-106 (La. App. 5 Cir. 5/26/04), 875 So.2d 878. However, the reasonable expectation of the insured leads in cases of ambiguity. *See Louisiana Ins. Guar. Ass'n v. Interstate Fire & Casualty Co.*, 630 So.2d 759 (La. 01/14/94).

The construction of the insurance policy proves ambiguous because of its internal contradictions. Under the present circumstances, a reasonable expectation of the insured would lead to the conclusion that only those provisions presented in his/her policy should be considered and other attachments should be disregarded when the main document specifically instructs the insured to do so. In following this pattern, the Causes of Loss-Special Form, G-18660-A should not act to exclude policy coverage, given the other relevant portions of the policy referenced above, which support Plaintiff's claim for coverage and forbid exclusions other than those made in Declarations

document or on the Your Business Personal Property - Separation of Coverage Form."

> **D. Ambiguous Wording of Contract Imputes the Reasonable Expectation Doctrine**

The reference to an inventory "shortage" described in the "The Causes of Loss-Special Form, Form G-18660-A", Section C (1)(c), proves ambiguous. The relevant section reads as follows:

> c. **Property that is missing, where the only evidence of the loss or damage is a <u>shortage</u> disclosed on taking inventory or other instances where there is no physical evidence to show what happened to the property.**

Plaintiff claims that the use of "shortage" in the policy should be considered ambiguous leading to the use of the "reasonable expectation doctrine, yielding the interpretation most favorable to the insured. *See Louisiana Civil Code,* art. 2056; *Andrews v. Columbia Cas. Ins. Co., 2006-0896* (La. App. 1 Cir. 3/23/07); *Hill v. Shelter Mut. Ins. Co.*, 2005-1818 935 So.2d 691 (La. 7/10/06). More specifically, if the meaning of a word or phrase is ambiguous or subject to more than one interpretation the courts will use that meaning which operates against the party who supplies the words or from whom a writing otherwise proceeds. *Smith v. Ranger Ins. Co.,* 301 So.2d 673 (La. App. 3 Cir. 1974). It is unlikely that a reasonable insured would expect "shortages" to encapsulate large scale losses discovered immediately after a destructive fortuitous event like a Hurricane. A reasonable interpretation of this term would consist of slight discrepancies. As a result, the use of the term shortages should

be construed against Defendant.

### E. The Evidence Provided by Plaintiff Contravenes Movant's Missing Property Claim

Defendant asserts that only after Defendant rejected Plaintiff's claim for missing inventory due to windstorm did Plaintiff claim its items might have been stolen in a theft/burglary following the Hurricane. Defendant further alleges that Plaintiff offered no direct evidence of theft; it simply highlighted the discrepancy between the physical inventory taken after the storm and a paper inventory taken before the storm.

The loss claimed by Plaintiff is not a loss explained only by an entry in a routine inventory as argued by Defendant. Rather, the loss is explained in sworn statements by the business owner and others that the business' warehouse shelves were stocked to capacity immediately before the hurricane and the stock was largely missing several days afterward when evacuees were permitted to return; the settled height of the water in the business as 57" (see Defendant's Exhibit 5, page 5, para 10); the fury of the water through the building was sufficient to carry a large soft drink machine and other objects into the building (*see* deposition of J.C. Hymel, page 63 line 24 - page 64, line 4 Exhibit M); and the widespread looting, burglary and thievery occurred in the vicinity of Plaintiff's business (*see* affidavits of Maj. Sharp, STPSO, Exhibit A and Mrs. Roy Heck Exhibit O)

Defendant files its summary judgment motion on the basis

that the items claimed by Plaintiff are simply missing property as opposed to stolen property. "Mysterious disappearance" of property is expounded upon by the Louisiana Fourth Circuit in *Claiborne v. United States Insurance Company*, 193 So.2d 315 (La. App. 4th Cir. 12/5/1966).  It is described as "any disappearance or loss under unknown, puzzling or baffling circumstances which arouse wonder, curiosity, or speculation, or circumstances which are difficult to understand or explain. . . a disappearance under circumstances which excite, and at the same time baffle, wonder or curiosity."

Both Plaintiff and Defendant discuss at length what constitutes missing property or theft covered under insurance policies.  The cases cited, however, either do not originate in the Fifth Circuit or do not speak to the true issue before the Court, which is how to distinguish missing property from stolen property/theft.  The Fifth Circuit has examined the very issue of intersection between mysterious disappearance and theft, in *Coastal Plains Feeders, Inc. v. Hartford Fire Insurance Co. et. al.*, 545 F.2d 448, 452 (5th Cir. 1977). The Court stated:

> " . . . [I]t is accepted universally that the insured may prove theft by proving that circumstances surrounding the disappearance of property support an inference that theft probably was the cause of the disappearance. If the insured were required to prove theft by so-called direct evidence production of the thief or of eyewitnesses to the theft '(t)his would be tantamount to denial of coverage for theft because theft is generally carried on in a secretive manner."

Although the Fifth Circuit claimed diversity jurisdiction in Coastal Plains Feeder, an Alabama based-case, its application in

the present matter outweighs the authority cited by parties, which fall outside of the purview of the Fifth Circuit and fail to directly and adequately address this issue.

Falling in line with the Coastal Plains explanation, Plaintiff supports its claim of theft by pointing to the record to show circumstantial evidence of theft.  This evidence further negates Defendant's allegation that Plaintiff's claim only constitutes missing property.  In addition to scrutinizing its invoices, sale records, purchase orders, vendor transaction reports, and cancelled checks, Plaintiff submits evidence of widespread looting in the vicinity of plaintiff's building, which occurred after the storm.  For example, support for this claim may be found in an affidavit of a neighbor (Exhibit N), whose home was looted and burglarized after the hurricane.  Further contravening Defendant's theory that Plaintiff's claim constitutes missing property as opposed to theft is the compromised condition of the building.  Defendant even asserts that there was no evidence of forced entry, but the collapsed front wall, rear and side doors of the building should suffice as evidence of a point of  possible entry in a theft after Hurricane Katrina.  The sum of this evidence demonstrates the existence of a material factual dispute regarding theft, which supports the denial of Defendant's motion for summary judgment.

### ***CONCLUSION***

In sum, Defendant, Continental Casualty Insurance Company, fails to meet its burden for summary judgment.  The construction

and ambiguity of the insurance policy severely cut against Continental's allegations, lending to a material dispute of fact regarding the applicability of the exclusion clause cited by Continental.  In addition, material facts remain in dispute regarding the theft of the property.

Accordingly, **IT IS ORDERED** that Defendant's Motion for Summary Judgment is **DENIED**.

New Orleans, Louisiana, this 2nd day of November, 2007.

_____
IVAN L. R. LEMELLE
UNITED STATES DISTRICT JUDGE